UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**FLORIDA FARM BUREAU INSURANCE
COMPANIES,**

    Plaintiff,

v.                      **Case No.: 8:04-CV-2357-T-EAJ**

**PULTE HOME CORPORATION,**

    Defendant,

v.

**KINWIN LIMITED,**

    Third Party Defendant.

_____/

**ORDER**

    This cause comes before the Court on **Pulte's Motion to Dismiss
or Stay Action Subject to Arbitration and to Compel Arbitration**
(Dkt. 6); **Pulte's Memorandum in Support of Motion to Dismiss** (Dkt.
25); and **Plaintiff's Response in Opposition to Pulte's Motion for
Dismissal or for Stay of Action Subject to Arbitration.**[1] (Dkt. 28)
After the parties submitted an amended case management report,
Pulte filed an **Affidavit in Support of Pulte's Motion to Dismiss or
for Stay of Action.** (Dkt. 34)  On May 5, 2005, Plaintiff filed a
**Response to Affidavit in Support of Pulte's Motion to Dismiss or
for Stay of Action.** (Dkt. 38)

_____

[1] The parties in this case have consented to the exercise of
jurisdiction by a United States Magistrate Judge.  (Dkts. 14, 31)

I.   Background

Plaintiff filed a complaint in this action in the Circuit Court of the Twelfth Judicial Circuit, in and for Manatee County, on April 22, 2004. (Dkt. 1)  On October 22, 2004, Pulte filed a timely Notice of Removal, pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1332.  (Dkt. 1)  On November 1, 2004, Pulte filed its Answer and Affirmative Defenses and a third party complaint against Kinwin Limited.  (Dkts. 4, 7)

Plaintiff seeks damages of approximately $114,377.00 arising from Pulte's construction of a home in Bradenton, Florida in 1992. (Dkt. 2 at ¶ 2)

In December 1999, Matthew N. Clinger and Elica D. Clinger (the "Clingers") entered into a Purchase Agreement and Limited Warranty with Pulte to construct a home.[2]  (Dkt. 34 at 2)  The arbitration provision of the Purchase Agreement provides in pertinent part:

> Any controversy, claim or dispute arising out of or relating to this Agreement or Your purchase of the Home (other than claims under the Limited Warranty) shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association ("AAA") and the Federal Arbitration Act (Title 9 of the United States Code) . . . .  As a condition

---

[2] Pulte alleges that due to corporate reorganization, it cannot locate a copy of the contract between Pulte and the original homeowner, the Clingers. (Dkt. 6 1-2)  Consequently, Pulte relies upon a copy of "an exemplary (sic) contract from the same project, subdivision and time period."  (Dkt. 6, Ex. A)

precedent to arbitration, the dispute shall
first be mediated in accordance with the
Construction Industry Mediation Rules of the
AAA, or such other mediation service selected
by Us.  Claims under the Limited Warranty will
be arbitrated in accordance with the
arbitration provision set forth in the Limited
Warranty.

(Dkt. 34 at 7)

The Purchase Agreement incorporated a Limited Warranty into
the agreement.  Article II, paragraph C of the Limited Warranty
provides:

IT IS UNDERSTOOD AND AGREED THAT PULTE'S
LIABILITY UNDER THIS WARRANTY WHETHER IN
CONTRACT, IN TORT, IN NEGLIGENCE OR OTHERWISE,
IS LIMITED TO THE REMEDY PROVIDED IN THIS
LIMITED WARRANTY.  PULTE'S OBLIGATIONS UNDER
THIS LIMITED WARRANTY AND UNDER THE PURCHASE
AGREEMENT ARE LIMITED TO REPAIR AND
REPLACEMENT.  UNDER NO CIRCUMSTANCES SHALL
PULTE BE LIABLE FOR ANY SPECIAL, INDIRECT OR
CONSEQUENTIAL DAMAGES, INCLUDING WITHOUT
LIMITATION ANY DAMAGES BASED ON A CLAIMED
DECREASE IN THE VALUE OF THE HOME, EVEN IF
PULTE HAS BEEN ADVISED OF THE POSSIBILITY OF
SUCH DAMAGE.

THIS LIMITED WARRANTY IS THE ONLY WARRANTY
APPLICABLE TO THIS PURCHASE.  ALL OTHER
WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT
NOT LIMITED TO, ALL IMPLIED WARRANTIES OF
FITNESS, MERCHANTABILITY OR HABITABILITY, ARE
DISCLAIMED AND EXCLUDED.

(Dkt. 34 at 19)  The Limited Warranty is "provided to the original
purchaser of the home and to all subsequent owners who take title
within the warranty periods identified below and use the home for
their residence only."  (Dkt. 34 at 16)  Similar to the provisions

of the Purchase Agreement, the parties are required to resolve their disputes under the Limited Warranty first by mediation and then by binding arbitration.   (Dkt. 34 at 19)

Plaintiff alleges that the insured homeowners, R. Chris Landsberg and Carol B. Landsberg (the "Landsbergs") purchased the home from the Clingers in July 2001.

On or about September 2004, Plaintiff asserts that heavy rainstorms caused leaks in the roof, windows, ceiling and walls of the Landsbergs' house.   (Dkt. 2 at ¶¶ 3-4)   As a result of the water leaks, Plaintiff alleges that mold and fungi grew in the interior of the house causing serious health hazards to the Landsbergs. (Dkt. 2 at ¶ 7)

Plaintiff further alleges that it incurred the expense of eradication of the mold and fungi from the Landsbergs' house. Pursuant to the insurance policy of the homeowners, Plaintiff paid the Landsbergs approximately $114,377.16 under the policy. (Dkt. 2 at ¶ 9)  Under the terms of the policy, Plaintiff alleges it is subrogated to the rights of the insured homeowners. (Id.)

In Count I, Plaintiff alleges negligence in the design and construction of the home. (Dkt. 2 at ¶ 11)  In Count II, Plaintiff asserts a claim for breach of implied warranty. (Dkt. 2 at ¶ 13) In Count III, Plaintiff alleges a claim for strict liability in the defective design and construction of the house. (Dkt. 2 at ¶ 15)

A.    Pulte's Motion to Dismiss or Stay Action and Motion to
      Compel Arbitration

Pulte's Motion to Dismiss or Stay Action Subject to Arbitration and to Compel Arbitration contends that any dispute or claims arising out of the Purchase Agreement and the Limited Warranty shall be settled first by mediation and then by binding arbitration.   Plaintiff, as a third-party beneficiary of the Purchase Agreement and Limited Warranty, is bound by the mandatory mediation and arbitration provisions according to Pulte, and has refused to submit to mediation or binding arbitration.  (Dkt. 6 at ¶ 13)   Thus, Pulte seeks an order dismissing or staying the case and compelling Plaintiff to arbitrate its claims.

In opposing the motion to dismiss, Plaintiff contends that it is not required to arbitrate its dispute with Pulte.[3]  As a non-

_____

[3]   Initially, Plaintiff opposed Pulte's motion to dismiss because Pulte relied upon a copy of an exemplar contract, which included only selected provisions of the Purchase Agreement and Limited Warranty.  (Dkt. 28 at 3)  Subsequently, Pulte filed the affidavit of Laura A. Ray, an employee of Pulte, attaching a complete copy of the sample contract.  (Dkt. 34)  According to this affidavit, the exemplar contract was Pulte's standard contract for purchasers of new construction homes in the subdivision where the Clingers purchased their house.  (Dkt. 34 at 2)  Furthermore, Pulte asserts that the terms and provisions of the sample contract are the same terms as contained in the Purchase Agreement signed by the Clingers.  (Id.)  In response to Pulte's affidavit, Plaintiff does not object to the authentication and identification of the Purchase Agreement and Limited Warranty.  (Dkt. 38 at 1)  Rather, Plaintiff objects to the legal opinions contained in the affidavit as to the effects of the Purchase Agreement and the application of the Limited Warranty.   (Id.) This court relies on its own legal analysis of the issues presented and does not place any weight on the legal opinions set forth in the affidavit.

signatory to the Purchase Agreement, Plaintiff asserts it was not an intended third party beneficiary of the arbitration provision between Pulte and the Clingers. Because the Purchase Agreement and Limited Warranty waive all rights to bring an action for implied warranty, strict liability and negligence, Plaintiff contends that these documents do not benefit Plaintiff. Finally, Plaintiff argues that the issue of mold and fungi damage caused by water leaks is not arbitrable as contemplated by the parties.

II. Discussion

The appropriate standard in deciding to dismiss a claim is whether it appears beyond doubt that the plaintiff can prove no set of facts to support his claim. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). All facts set forth in the complaint are accepted as true and the court must construe the facts alleged in the light most favorable to the plaintiff. Hunnings v. Texaco, 29 F.3d 1480, 1484 (11th Cir. 1994). When considering a motion to dismiss for failure to state a claim, the court limits its consideration to the pleadings and exhibits attached thereto. Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000).

Pulte filed the instant motion pursuant to the Federal Arbitration Act (the "FAA") seeking to compel arbitration of the dispute between Pulte and Plaintiff. Under Section 4 of the Act, a party to a written agreement which involves interstate commerce and contains an arbitration clause has a right to petition a

district court to issue an order compelling arbitration.  9 U.S.C.
§ 4.  There are three factors courts consider in ruling on a motion
to compel arbitration of a given dispute: (1) whether a valid
written agreement to arbitrate exists; (2) whether an arbitrable
issue exists; and (3) whether the right to arbitrate was waived.
Sims v. Clarendon Nat'l Ins. Co., 336 F. Supp. 2d 1311, 1326 (S.D.
Fla. 2004); Raymond James Fin. Servs. v. Saldukas, 896 So. 2d 707,
711 (Fla. 2005); Seifert v. U.S. Home Corp., 750 So.2d 633, 636
(Fla. 1999).

In this case, the court must resolve two issues in making a
determination on the ultimate issue of arbitrability.[4]  First,
whether Plaintiff, as a non-signatory to the Purchase Agreement and
Limited Warranty, is bound by the arbitration clauses.  Second, if
Plaintiff is bound by the terms of the arbitration provisions,
whether the Plaintiff's claims are subject to arbitration.

A.   Plaintiff is Bound by Arbitration Clauses

In enacting the FAA, Congress sought to manifest a federal
policy favoring arbitration agreements.  E.E.O.C. v. Waffle House,
Inc., 534 U.S. 279, 289 (2002).  Consequently, arbitration clauses
are to be generously construed in favor of arbitration.  Mose H.
Cone Mem. Hospital v. Mercury Const. Corp., 460 U.S. 1, 24 (1983);

---

[4]   The parties have not raised the issue of whether Pulte
waived the right to compel arbitration.  Therefore, it is
unnecessary to address this issue.

Ruby-Collins, Inc. v. Huntsville, 748 F.2d 573, 576 (11th Cir. 1984).

Notwithstanding the strong federal policy favoring arbitration agreements, Plaintiff is correct that no party may be forced to submit to arbitration that the party did not intend and agree to arbitrate. Kemiron Atlantic, Inc. v. Aguakem International, Inc., 290 F.3d 1287, 1290 (11th Cir. 2002); see Seaboard Coast Line R.R. v. Trailer Train Co., 690 F.2d 1343, 1352 (11th Cir. 1982)(the federal policy favoring arbitration cannot serve to stretch a contract beyond the scope originally intended by the parties). Nonetheless, a non-signatory to a contract may be deemed a third party beneficiary of the contract and be compelled to arbitrate a dispute arising out of a contract. MS Dealer Service Corp., v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999); Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3 753, 758 (11th Cir. 1993), cert. denied, 513 U.S. 869 (1994).

Although federal law establishes the enforceability of arbitration agreements, state law governs the interpretation and formation of such agreements. Employers Insurance of Wausau v. Bright Metal Specialities, Inc., 251 F.3d 1316, 1322 (11th Cir. 2001). Under Florida law, the question of whether a contract was intended for the benefit of a third party is generally regarded as one of contract construction. Bochese v. Town of Ponce Inlet, 405 F.3d 964, 983 (11th Cir. 2005). To determine whether a party is a

8

third party beneficiary to a contract, a court must review the terms of the contract as a whole. Id. at 982 (intention of the parties is determined by the terms of the contract as a whole, construed in the light of the circumstances under which it was made and the apparent purpose that the parties are trying to accomplish). The court should focus on whether the contracting parties intended that a third party should receive a direct and substantial benefit which might be enforced by the court. Ken Jenne v. Church & Tower, Inc., 814 So.2d 522, 525 (Fla. 4th DCA 2002); see Horizon Images, Inc. v. Delta Color Graphics, Inc., 639 So. 2d 186, 187 (Fla. 4th DCA 1994)(there must be a clear intention in the contract to provide a direct and substantial benefit to a third party).

In the present case, the Limited Warranty, which is incorporated into the Purchase Agreement, specifically notes that the warranties provided to the original purchaser are likewise provided "to all subsequent owners who take title within the warranty periods identified below and use the home for their residence only." (Dkt. 34 at 16) Under the terms of the Limited Warranty, the contractor is required to repair or replace work covered for a subsequent owner. Consequently, by permitting the subsequent owner to assume the warranties afforded to the original owner, the parties to the Limited Warranty unambiguously intended that subsequent owners of the home would directly and substantially

benefit from the Limited Warranty.  Thus, because subsequent owners of the home receive more than an incidental benefit from the Limited Warranty, subsequent owners of the home are third party beneficiaries to the Limited Warranty and can be compelled to arbitrate.  See Martha A. Gottfried, Inc. v. Paulette Koch Real Estate, Inc., 778 So. 2d 1089 (Fla. 4th DCA 2001)(third party beneficiary is bound to arbitrate dispute); Zac Smith & Co. v. Moonspinner Condominium Assoc. Inc., 472 So.2d 1324 (Fla. 1st DCA 1985)(a condominium association alleging defective design and construction of a condominium was a third-party beneficiary and required to arbitrate dispute).

Under the terms of the insurance policy, Plaintiff alleges it is subrogated to the rights of the Landsbergs.  (Dkt. 2 at ¶ 9)  It is well settled that an insurer-subrogee stands in the shoes of the insured.  Dade County School Bd. v. Radio Station WQBA, 731 So. 2d 638, 646-47 (Fla. 1999).  Therefore, because Plaintiff is subrogated to the rights of the Landsbergs, Plaintiff is a third party beneficiary to the Purchase Agreement and the Limited Warranty.  As such, Plaintiff is bound by the arbitration provisions to the same extent as the Landsbergs.  See American Bureau of Shipping v. Tencara Shipyard S.P.A., 170 F.3d 349, 353 (2d Cir. 1999)(because owners of ship required to arbitrate dispute, insurer-subrogee must also submit to arbitration).

B.   <u>Plaintiff's Claims Are Subject to Arbitration</u>

Having determined that Plaintiff is subject to the arbitration provisions of the Purchase Agreement and the Limited Warranty, the court next must determine if the claims asserted by Plaintiff are arbitrable.  In this case, Plaintiff asserts: (1) a claim for the negligence in the design and construction of the home; (2) a claim for breach of implied warranty; and (3) a claim for strict liability in the defective design and construction of the house.  (Dkt. 2 at ¶ ¶ 11, 13, 15)

The test for determining arbitrability of a particular claim under a broad arbitration provision is whether there is some nexus between the dispute and the contract containing the arbitration clause.  <u>Seifert</u>, 750 So.2d at 638.  In applying this standard, courts have focused on the factual allegations of the complaint to determine whether those allegations implicate the contractual agreement and hence the arbitration clause.  <u>Gregory v. Electro-Mechanical Corp.</u>, 83 F.3d 382, 385 (11th Cir. 1996)(whether a claim falls within scope of an arbitration agreement turn on the factual allegations in the complaint rather than the legal causes of action asserted).

The mere fact that the dispute would not have arisen but for the existence of the contract is insufficient itself to transform a dispute into one "arising out of or relating to" the agreement. See <u>Armada Coal Export, Inc. v. Interbulk, Ltd.</u>, 726 F.2d 1566 (11th

11

Cir. 1984).  However, a party may not avoid the broad language in
an arbitration clause by attempting to cast its complaint in tort
rather than contract.  <u>Sunkist</u>, 10 F.3d at 758.  For a tort claim
to be considered "arising out of or relating to" an agreement, it
must, at a minimum, raise some issue which requires reference to or
construction of some portion of the contract itself.  <u>Seifert</u>, 750
F.2d at 638.   Where an arbitration clause is broad, a tort claim
will be arbitrable if the claim is either directly or indirectly
related to the subject matter of the contract.  <u>Telecom Italia, SPA
v. Wholesale Telecom Corp.</u>, 248 F.3d 1109, 1114 (11th Cir. 2001);
<u>Sunkist</u>, 10 F.3d at 758 (tort claim falls within the purview of the
arbitration clause because closely related and intertwined with
contract).

     Plaintiff relies upon <u>Seifert</u> in arguing that Plaintiff's tort
claims and breach of warranty caused by Pulte's negligent design and
construction are not arbitrable issues. (Dkt. 28 at 5)  This case
is distinguishable from <u>Seifert</u>.

     In <u>Seifert</u>, plaintiff sued the defendant contractor alleging
negligence and strict liability claims.   750 So.2d at 635.
Specifically, plaintiff alleged that the defective design and
construction of the air conditioning system caused the wrongful
death of her husband.  <u>Id</u>.  Because the contract referred only to
the sale and purchase of the house, the Florida Supreme Court
concluded that there was nothing in the arbitration provisions to

indicate that the parties intended to include tort claims for wrongful death or personal injuries within the scope of the contract.  <u>Id.</u> at 638-641.

Florida courts have interpreted the holding in <u>Seifert</u> narrowly.  In <u>Sears Authorized Termite and Pest Control, Inc. V. Sullivan</u>, 816 So.2d 603, 605 (Fla. 2002), the court explained that the <u>Seifert</u> case involved an inherently dangerous design of an air conditioning system and that the "tort claim related to duties wholly independent of the agreement by the builder to construct the house."  In particular, the court in <u>Seifert</u> recognized that the carbon monoxide poisoning was not related to any of the contemplated terms of the contract.  <u>Id.</u> at 605.  Unlike the latent fatally dangerous condition in the Seifert house, the court in <u>Sullivan</u> concluded that the tort claims resulting from spider bites required a reference to or construction of a portion of the contract to control pests.  <u>Id.</u> Because the personal injury claims in <u>Sullivan</u> rested upon the failure to perform the agreement, and because the arbitration clause covered the performance of the agreement, the court held that the <u>Seifert</u> decision was not controlling. Consequently, the court held that plaintiff's personal injury claims for spider bites were covered by the arbitration provision.  <u>Id.</u> at 605-06.

In an analogous case, plaintiffs executed a purchase agreement with a builder to construct a new home.  <u>Engle Homes, Inc. v. Jones</u>,

870 So.2d 908, 909 (Fla. 4th DCA 2004).  The arbitration provision provided that any and all claims regarding the construction of the house shall be settled by binding arbitration.  _Id._  The homeowners subsequently sued the builder asserting a cause of action for damages arising from mold infestation due to the negligent design and construction of the home by the builder and the window subcontractor.  _Id._  Plaintiffs alleged that due to the builder's negligence the home was rendered unlivable, and that they suffered adverse health consequences as well as damage to their personal belongings.  _Id._  The homeowners alleged breach of express and implied warranty, negligence and violations of state building codes. _Id._ at 909-10.

Relying on _Seifert_, plaintiffs in _Engle Homes_ argued that the arbitration clause did not clearly indicate that it applied to tort or property claims.  _Id._ at 911.  Distinguishing the facts from _Seifert_, the court in _Engle Homes_ concluded:

> Here, as in _Seifert_, the Purchase Agreement between the Jones and Engle Homes was for the sale and purchase of a new home; however, in this case, the arbitration clause specifically states that 'any and all unsettled claims or disputes regarding the construction of the Residence arising after closing shall be settled by binding arbitration.

_Id._  Citing to the _Sullivan_ decision, the court in _Engle Homes_ determined that the arbitration clause specifically indicated that the parties intended to arbitrate claims relating to the construction of the home which included the claims of negligent

14

design and construction.  <u>Id.</u>  Thus, because the homeowner's tort
and property damage claims relating to the negligent design and
construction of their home were addressed by the arbitration clause,
these claims were subject to arbitration.  <u>Id.</u>

In this case, similar to the situations in <u>Sullivan</u> and <u>Engle
Homes</u>, the arbitration provisions in the Purchase Agreement and the
Limited Warranty indicate that the parties intended to mediate and
arbitrate all claims relating to the purchase and construction of
the house.  The arbitration clause specifically states that "[a]ny
controversy, claim or dispute arising out of or relating to this
Agreement or Your purchase of the Home (other than claims under the
Limited Warranty) . . ." would be settled first by mediation, and
then by arbitration.[5]  The Limited Warranty states that the parties
are required to resolve disputes arising out of or relating to the
Limited Warranty first by mediation, and then by arbitration.
Furthermore, the language of the Limited Warranty expressly covers
claims "whether in contract, in tort, in negligence or otherwise."
Indeed, the Limited Warranty expressly disclaims and excludes all

---

[5] The language "any claim" used in the arbitration clause
includes arbitration of contract and tort claims.  <u>See</u> <u>Bullard v.
Capital One, F.S.B.</u>, 288 F. Supp. 2d 1256, 1258 (N.D. Fla.
2003)("any legal claim" includes arbitration of contract, tort,
civil theft claims as well as any other legal claim).

15

express or implied warranties, including all implied warranties of fitness, merchantability or habitability.[6]

Analogous to the claims in Engle Homes, Plaintiff's tort and breach of warranty claims are premised upon Pulte's alleged negligent design and construction of the house.  Indeed, to resolve Plaintiff's claims, it is necessary to refer to or construe the provisions of the Purchase Agreement and Limited Warranty.  Because Plaintiff's claims are directly related and closely intertwined with the Purchase Agreement and the Limited Warranty, Plaintiff's claims are addressed by the Purchase Agreement and Limited Warranty. Therefore, Plaintiff's claims are subject to mediation and arbitration.

C.  Pulte's Motion to Dismiss or For Stay of Action

Pulte seeks an order dismissing or staying the case and compelling Plaintiff to arbitrate its claims.  Pursuant to the FAA, a district court shall stay a pending suit if "the issue involved in such suit or proceeding is referable to arbitration" under a valid arbitration agreement.  9 U.S.C. § 3.  For arbitrable issues, the language of Section 3 of the FAA indicates that a stay of proceedings is mandatory.  Klay v. Pacificare Health Sys. Inc., 389 F.3d 1191, 1203 (11th Cir. 2004);  see also Bender v. A.G. Edwards

---

[6] See Barrett Home Corp. v. Rutenberg Corp., 160 B.R. 387, 389 (M.D. Fla. Bankr. 1993)(implied warranty can be avoided by a disclaimer in limited warranty).

16

& Sons, Inc., 971 F.2d 698, 699 (11th Cir. 1992)(upon finding that claim is subject to an arbitration agreement, the court should order that the action be stayed pending arbitration).   If the parties do not proceed to arbitration, the court may compel arbitration. Bender, 971 F.2d at 699.  Accordingly, this action is stayed pending the mediation and, if necessary, the binding arbitration of Plaintiff's claims.

## CONCLUSION

For the reasons set forth above, the court finds that Plaintiff, as a non-signatory to the Purchase Agreement and Limited Warranty, is a third party beneficiary of these agreements. Consequently, this action is stayed and Plaintiff is required to resolve all claims arising out of and relating to these agreements first by mediation, and then by binding arbitration.

Accordingly, and upon consideration it is **ORDERED**:

> (1)  Pulte's Motion to Dismiss or Stay Action Subject to Arbitration and to Compel Arbitration (Dkt. 6) is **GRANTED** to the extent that this action is stayed.   In accordance with the terms of the Purchase Agreement and Limited Warranty, the parties are ordered to mediate their dispute.  Should the parties fail to resolve their

dispute by mediation, the parties are ordered to participate in binding arbitration. A joint status report shall be filed every 90 days regarding the progress of the case.

**DONE AND ORDERED** in Tampa, Florida on this 6th day of June 2005.

ELIZABETH A JENKINS
United States Magistrate Judge